**CYPRUS MOUNTAIN COAL CORPORATION, a/k/a Lost Mountain Mining, Inc., Movant,**

v.

**Charles BREWER, Manuel Jones, Beulah Davis, Nick Criss Trucking, Inc., Jeanette Jones, James Jones, Brack Baker Trucking, Inc., Ollie Jones, Lester Asher, Stanley Watts, Bobby Terry, Willie Miller, Sheila Fugate, Billy Ray Combs,**

Larry Standafer, James Hatton Trucking, Inc., Leonard Davis, John S. Stacy Trucking, Inc., James E. Napier Trucking, Inc., Wayne Patrick, John Baker, Nora Jones, Shirley Fugate and Bulan Trucking, Inc., Respondents.

No. 91–SC–999–I.

Supreme Court of Kentucky.

April 9, 1992.

Ronald G. Combs, Gullett, Combs & Branham, Hazard, Charles E. Shivel, Jr., P. Douglas Barr, Stoll, Keenon & Park, Lexington, for movant.

John R. Hansen, Hazard, for respondents.

Sara Walter Combs, Lexington, Clarence A. Noble, III, Hazard, amicus curiae.

## OPINION AND ORDER

Movant, Cyprus Mountain Coal Corporation, a/k/a Lost Mountain Mining, Inc., petitions this Court under CR 65.09 for dissolution of an October 15, 1991, Perry Circuit Court order granting a mandatory temporary injunction to Charles Brewer and other named respondents. Under this order the court directed Cyprus Mountain Coal Corporation (hereinafter described as "Cyprus") to reinstate the coal hauling services of respondents or else be held in contempt.

Respondents were among forty-two truck owner/operators who provided coal hauling services as independent contractors at the Lost Mountain Mine. In June of 1985, Lost Mountain Mining, Inc. (hereinafter described as "LMMI") desired to obtain coal hauling services from a single contractor and thus entered into a written agreement with Bulan Trucking (hereinafter described as "Bulan"). Within this three-year contract, which commenced on June 1, 1985 and ended on June 30, 1988, Bulan agreed to subcontract the services of between twenty to twenty-five trucks. Another provision in the document required Bulan to subcontract the services of coal haulers who were not participants in a separate oral buy-out agreement.

The oral buy-out agreement, which was later set forth in written form in December of 1985, provided for the reduction of seventeen coal haulers from forty-two, the latter number representing haulers who had previously independently contracted their services with LMMI. Within the written buy-out agreement were also financial ar-

rangements necessary to effectuate this reduction. In these arrangements LMMI agreed to pay the seventeen "bought-out" truck owners $30,000 each, this entire transaction totalling $510,000.00. Bulan in return, agreed to reimburse LMMI half of this amount, or $255,000.00. In order to recoup Bulan's $255,000 share, LMMI deducted $.10 from each ton of coal hauled by Bulan, with an additional nine percent interest to be included, as specified in the document.

Subsequently, on May 10, 1988, Cyprus, a/k/a LMMI, entered into a coal hauling contract with a new independent contractor, Perry Transport, Inc. (hereinafter described as "Perry Transport"). As in the LMMI–Bulan contract, Perry Transport subcontracted with individual owner/operators to provide hauling services for Cyprus. This new contract became effective July 1, 1988 and provided for expiration in two years with a renewal option. Exercising this option, Cyprus continued a contractual relationship with Perry Transport up to the present time.

Friction erupted following the Perry Transport contract and culminated in a March, 1989 shooting death of Elhannon Jones, Jr., an owner/officer of Bulan. Accused of the shooting was Zack Caldwell, an owner/officer of Perry Transport. In retaliation for the death of Elhannon Jones, Jr., Manuel Jones, son of the decedent, shot and wounded Caldwell. Testifying at the jury trial in Perry Circuit Court concerning the murder of Elhannon Jones, Jr., was Brewer, the original, sole complainant against Cyprus in this cause of action. Following the rendering of a verdict of not guilty, charges against Manuel Jones were dropped.

Brewer, alleging that his termination as a subcontractor for Perry Transport resulted from his prior trial testimony, petitioned for temporary and permanent injunctions in Perry Circuit Court on May 14, 1991, seeking reinstatement to his position as a coal hauler for Cyprus. In his complaint Brewer claimed he had a vested right to a "lifetime slot" to haul coal for Cyprus since he was a member of the original twenty-five haulers enumerated in the LMMI–Bulan contracts. These slots, Brewer argued, resulted from the June, 1985 contract and subsequent agreements between LMMI and Bulan. Brewer claimed that the $255,000 repaid by the twenty-five haulers was consideration for the life-time slots/jobs, and that Bulan was the required negotiating agent representing these twenty-five haulers. Because Cyprus directly contracted with Perry Transport to obtain hauling services, Brewer argued that the arrangement designating Bulan as an agent representing the owner/operators was violated.

The Perry Circuit Court entered a temporary injunction on May 16, 1991, finding that Brewer had suffered irreparable damage by deprivation of rights negotiated on his behalf by Bulan, and reasoning that such deprivation could not be compensated by liquidated damages. Following issuance of this order, the Perry Circuit Court, on September 17, 1991 denied Cyprus' motion to dismiss for failure to join Perry Transport as a necessary party under CR 19.

An ex parte order issued by the Court of Appeals on May 20, 1991, stayed enforcement of the circuit court injunction, pursuant to a motion filed by Cyprus for intermediate relief under CR 76.33(1). Finding that the circuit court had abused its discretion because Brewer "had an adequate remedy at law," the Court of Appeals pursuant to a CR 65.07 motion filed by Cyprus, dissolved the temporary injunction on June 13, 1991. Following this action, on July 16, 1991, a Perry Circuit Court order joined twenty-two additional parties to Brewer's initial complaint. With this joinder, the cause of action thus represented all but three of the twenty-five owner/operators enumerated in the LMMI–Bulan contract/agreements; the remaining three of the original twenty-five, Zack Caldwell, Dewey Grigsby, and Dave Caldwell, being owners/officers of Perry Transport.

Amending Brewer's initial complaint, the twenty-two parties sought a restraining order and injunctive relief against Cyprus under CR 65.01, 65.03, and 65.04, arguing that the LMMI–Bulan contract/agreements

made Bulan their collective bargaining agent and created guaranteed "life-time slots." Thus respondents sought cancellation of the Cyprus–Perry Transport contract and their reinstatement as coal-haulers for Cyprus.

On October 15, 1991, the Perry Circuit Court again entered a mandatory temporary injunction ordering Cyprus to employ the trucking services of the twenty-two respondents, finding they had suffered irreparable injury and could not be compensated by any other legal means. In an ex parte order staying enforcement of the temporary injunction, the Court of Appeals found that the respondents' alleged injuries would be adequately compensable by an award of money damages. On December 19, 1991, the Court of Appeals denied Cyprus' motion for interlocutory relief pursuant to CR 65.07, ruling that according to standards found in CR 65.04(1) and *Maupin v. Stansbury*, Ky.App., 575 S.W.2d 695 (1978), the Perry Circuit Court had not abused its discretion in granting the respondents' petition for a temporary injunction.

Cyprus has filed a CR 65.09 motion seeking relief from this Court. Under CR 65.-09, "[s]uch a motion will be entertained only for extraordinary cause shown in the motion." In sum, Cyprus' claim of "extraordinary cause" is that the injunctive order of the Perry Circuit Court presents them with a Hobson's choice. Cyprus argues it can either continue to recognize its contractual obligation with Perry Transport and thus use the coal hauling services of owner/operators subcontracting with Perry Transport, or it can meet the requirements found in the injunctive order and directly retain the services of the respondents. Counsel for Cyprus at oral argument postures that such a dilemma provides this Court with extraordinary circumstances with which to dissolve the temporary injunction under CR 65.09, because the circuit court order in essence voids the contract between Cyprus and Perry Transport.

Propriety of a temporary injunction is basically addressed to the sound discretion of the trial court. CR 65.04, *Morrow v. City of Louisville*, Ky., 249 S.W.2d 721 (1952); 42 Am.Jur.2d Injunctions § 48. But in granting such equitable relief, the trial court must 1) find that the party seeking relief has shown irreparable injury, a mandatory prerequisite to the issuance of any injunction, 2) weigh the various equities involved, and 3) determine a substantial question has been presented. *Maupin v. Stansbury, supra*.

While the respondents frame their cause of action both as a violation of a collective bargaining agreement and nonrecognition of their vested property rights in "life-time slots," the gravamen of their complaint is a claim for breach of contract[s]. Whether purported written and oral agreements between Cyprus and Bulan inured to respondents the exclusive right to jobs hauling coal for Cyprus is an adjudicative issue. Similarly, whether Cyprus violated an alleged contractual agreement creating Bulan as the respondents' exclusive bargaining agent, is a question based in contract interpretation.

■ Injunctions, generally, will not be granted, minus some positive provision of the law to the contrary, where there is a choice between ordinary processes of law and the extraordinary remedy by injunction, when the remedy at law is sufficient to furnish the injured party full relief to which he is entitled in the circumstances. *Collins v. Commonwealth*, Ky., 324 S.W.2d 406 (1959).

■ The respondents failed to meet their burden in showing that an immediate irreparable injury existed for which breach of contract damages could not have adequately recompensed them. An injury is irreparable if "there exists no certain pecuniary standard for the measurement of the damages." *United Carbon Company v. Ramsey*, Ky., 350 S.W.2d 454 (1961); 42 Am. Jur.2d Injunctions § 49. If respondents prove successful in their claims to contractual rights in hauling coal under the LMMI–Bulan contract/agreements, calculations are readily available to determine their monetary losses. A dollar amount derived from records concerning the coal

tonnage hauled by owner/operators during the alleged contractual breach could certainly provide an accurate gauge with which to calculate a precise damage amount.

Respondents' counsel at oral argument urged that fluctuating prices in coal preclude accurately measuring the alleged damages and thus the injunctive order was proper. While this characterization of the economic condition in the coal industry may be correct, as we previously noted, records pertaining to coal-hauling services for Cyprus during the period in question should more than adequately provide a measurement with which to calculate an accurate sum, if respondents prove successful in litigating their claim.

The temporary injunction was erroneously granted because the respondents failed to meet their burden in showing irreparable damage; the trial court thus abused its discretion in granting the temporary injunction. *Maupin v. Stansbury, supra.* Applying the extraordinary cause standard found in CR 65.09, we dissolve the temporary injunction and vacate the Court of Appeals order denying CR 65.07 relief, thus acknowledging Cyprus' current "Catch–22" predicament, whereby its compliance with the temporary injunction will force a breach in its contract with Perry Transport and therefore change the status quo of the parties involved.

It is so ordered.

All concur, except COMBS, J., who dissents by separate dissenting opinion.

ENTERED April 9, 1992

/s/ Robert F. Stephens
Chief Justice

COMBS, Justice, dissenting.

I respectfully dissent. While continuation of the injunction may put Cyprus in a "Catch–22" predicament with its contract with Perry Transport, it seems to me to be a predicament of the making of Cyprus and Perry.

The original agreement in June 1985 between LMMI, a/k/a Cyprus Mountain Coal Corporation, and Bulan was to accommodate Cyprus in obtaining an efficient arrangement for transportation of its coal to various shipping sites. In order to effectuate this, LMMI spent $510,000 in buying out some of the truck owners. Bulan paid one-half of this sum by permitting LMMI to deduct ten cents per ton for the coal hauled by it. In consideration of the performance by the truckers and the payment of one-half of the buy-out costs, Cyprus agreed to give "lifetime slots" to members of Bulan.

Ignoring the 1985 executed agreement with Bulan, Cyprus then entered into the 1988 agreement with Perry Transport which in my opinion is a direct breach of the 1985 agreement. There has been no attack on the validity of the '85 agreement. This puts the court in somewhat of a dilemma. To dissolve the restraining order would impair the obligations assumed by Cyprus under the 1985 agreement. This of course is constitutionally prohibited.

Much has been said about the adequacy of respondents' remedy at law. This ignores the human suffering of the truckers and their families who have a vested right to lifetime employment. It also ignores the precarious financial plight of the coal industry in east Kentucky.

For the foregoing reasons—and utilizing the old age maxim of he who seeks equity must do equity—I would affirm the action of the trial court and the Court of Appeals, and continue the injunction.