RENDERED: AUGUST 21, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0126-I

ANDY BESHEAR, IN HIS OFFICIAL            MOVANTS
CAPACITY AS GOVERNOR OF THE
COMMONWEALTH OF KENTUCKY; ERIC
FRIEDLANDER, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE
KENTUCKY CABINET FOR HEALTH &
FAMILY SERVICES; AND STEVEN STACK,
IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE KENTUCKY
DEPARTMENT FOR PUBLIC HEALTH


                   ON TRANSFER FROM COURT OF APPEALS
V.                   NO. 2021-CA-0391
                SCOTT CIRCUIT COURT NO. 21-CI-00128


GOODWOOD BREWING COMPANY, LLC         RESPONDENTS
D/B/A LOUISVILLE TAPROOM,
FRANKFORT BREWPUB, AND LEXINGTON
BREWPUB; KELMARJO, INC. D/B/A THE
DUNDEE TAVERN; AND TRINDY'S, LLC


**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>VACATING</u>**

This case is before us solely on review of a temporary injunction issued by the Scott Circuit Court. Having reviewed the record and arguments of the parties, we have determined that the hearing held by the trial court was inadequate and vacate the order granting a temporary injunction. Further, because the injunction issues are now moot, we decline to remand to the

circuit court for a new hearing on injunctive relief. Respondents' request for declaratory relief remains pending, however, and thus the case is remanded for further proceedings on the declaratory relief claims. Given that none of the challenged orders appear to remain in effect, the circuit court is directed to consider the mootness doctrine and exceptions as outlined in this Opinion when it addresses those claims.

## I. BACKGROUND

On March 6, 2020, in response to the COVID-19 global pandemic, Governor Andy Beshear declared a state of emergency in Kentucky pursuant to Executive Order (EO) 2020-215. During the subsequent days, weeks, and months, he issued additional executive orders and emergency regulations pursuant to Kentucky Revised Statutes (KRS) Chapter 39A to address the public health issues created by this highly contagious disease. The Cabinet for Health and Family Services (CHFS) also issued orders designed to reduce the spread of COVID-19. These orders included the prohibition of in-person dining at restaurants and the imposition of curfews on certain businesses, along with many other directives. Over the ensuing months, the Governor and CHFS amended their directives to reflect the growing understanding of COVID-19.

In the 2021 legislative session, the General Assembly passed several bills limiting the Governor's authority to act during a state of emergency.

House Bill (H.B.) 1,[1] as relevant to the issues before us, provided that

> during the current state of emergency declared by the Governor in response to COVID-19 or any future state of emergency related to any virus or disease, . . . [a]ny business . . . may remain open and fully operational for in-person services so long as it adopts an operating plan that [m]eets or exceeds all applicable guidance issued by the Centers for Disease Control and Prevention [(CDC)] or by the executive branch, whichever is least restrictive.

Senate Bill (S.B.) 1,[2] as relevant to the issues before us, amended KRS 39A.090 to provide that any "[e]xecutive orders, administrative regulations, or other directives issued under this chapter by the Governor shall be in effect no longer than thirty (30) days unless an extension, modification, or termination is approved by the General Assembly." It also prohibited the Governor from "declar[ing] a new emergency or continu[ing] to implement any of the powers enumerated in this chapter based upon the same or substantially similar facts and circumstances" as a previously expired executive order, administrative regulation, or other directive issued under KRS Chapter 39A "without the prior approval of the General Assembly."

S.B. 2[3] amended multiple sections in KRS Chapter 39A. Relevant to this case, the amendments require emergency regulations to meet higher burdens before being promulgated. They further provide that any administrative regulation that places restrictions on in-person gatherings or imposes

---

[1] Act of Feb. 2, 2021, ch. 3, 2021 Ky. Acts 14.

[2] Act of Feb. 2, 2021, ch. 6, 2021 Ky. Acts 17.

[3] Act of Feb. 2, 2021, ch. 7, 2021 Ky. Acts 26.

mandatory quarantine or isolation requirements will not be in effect for longer than thirty days.

The Governor vetoed these bills, but the General Assembly overrode his veto. The Governor and CHFS Secretary Eric Friedlander then filed suit in Franklin Circuit Court against Speaker of the House David Osborne, President of the Senate Robert Stivers, the Legislative Research Commission, and Attorney General Daniel Cameron.[4] The Governor and Secretary Friedlander sought a declaration that H.B. 1, S.B. 1, and S.B. 2 were unconstitutional and sought to enjoin their implementation. The Franklin Circuit Court granted the Governor and Secretary Friedlander the temporary injunctive relief they sought. The Attorney General sought relief from the Franklin Circuit Court's order in the Court of Appeals pursuant to CR 65.07. This Court then accepted transfer of that motion.

Less than a week after the Franklin Circuit Court issued its order, Goodwood Brewing Company, LLC, d/b/a Louisville Taproom, Frankfort Brewpub, and Lexington Brewpub; Trindy's, LLC; and Kelmarjo, Inc., d/b/a The Dundee Tavern (collectively referred to as "Goodwood") filed a lawsuit in Scott Circuit Court against the Governor, Secretary Friedlander, and the Commissioner of the Kentucky Department of Public Health, Dr. Steven Stack.[5]

---

[4] Franklin Circ. Ct., No. 21-CI-00089.

[5] When discussing this case specifically, we will refer to the circuit court defendants collectively as "the Governor."

Goodwood sought declaratory relief, a temporary injunction, and a permanent injunction regarding the Governor's orders related to COVID-19. Goodwood also filed a motion for a temporary injunction pursuant to Kentucky Rules of Civil Procedure (CR) 65.04 seeking three things. First, Goodwood sought to enjoin the defendants from enforcing various executive orders and administrative regulations issued under KRS Chapter 39A or KRS 214.020 that restrict their businesses. Goodwood also sought to enjoin the defendants from declaring a new state of emergency or issuing new orders and regulations regarding COVID-19. Finally, Goodwood sought to enjoin the defendants from continuing to implement any of the powers enumerated in KRS Chapter 39A relating to the COVID-19 pandemic.

Goodwood's CR 65.04 motion for a temporary injunction was heard in the Scott Circuit Court on April 1, 2021. At that time, the Governor requested a date for an evidentiary hearing where he could present evidence regarding the public interests at stake as well as the likelihood of harm. Goodwood objected to this request. The trial court denied the Governor's request for an evidentiary hearing, concluding that because Goodwood's motion only dealt with the legality of the statutes, the court only needed to hear the parties' legal arguments. The trial court stated that if during the course of the hearing something came up that required the taking of evidence, it would continue the hearing to take that evidence. However, at the end of the hearing, the trial court submitted on the issue without hearing any evidence.

On April 9, 2021, the Scott Circuit Court entered an opinion and order granting temporary injunctive relief to Goodwood. In the body of its opinion, the circuit court stated that the defendants were "specifically enjoined against issuing or enforcing new restrictions against only these specific [plaintiffs]." In the "Order" section of the opinion and order, the court enjoined the "Defendants and their designees and agents . . . from enforcing against only the individual Plaintiffs herein at their now-existing locations" a host of specifically enumerated executive orders, administrative regulations, and directives. Those orders, regulations, and directives are as follows:

   a. Executive Order 2020-215;

   b. March 16, 2020 CHFS Order;

   c. March 17, 2020 CHFS Order;

   d. March 19, 2020 CHFS Order;

   e. March 19, 2020 Order from the Public Protection Cabinet and the Department of Alcoholic Beverage Control;

   f. Executive Order 2020-246;

   g. Executive Order 2020-257;

   h. Executive Order 2020-258;

   i. Executive Order 2020-266;

   j. Executive Order 2020-315;

   k. Executive Order 2020-323;

   l. May 11, 2020 CHFS Order;

   m. May 22, 2020 CHFS Order;

6

n.  June 29, 2020 CHFS Order;

o.  Requirements for Restaurants and Bars, Version 1.0;

p.  Regulation 902 KAR 2:190E;

q.  July 28, 2020 CHFS Order;

r.  August 10, 2020 CHFS Order;

s.  Requirements for Restaurants and Bars, Version 5.0;

t.  Requirements for Restaurants and Bars, Version 5.4;

u.  Executive Order 2020-968;

v.  Executive Order 2020-1034;

w.  Regulation 902 KAR 2:211E; and

x.  Version 5.5 of the Restrictions on Restaurants and Bars.

In its order granting temporary injunctive relief, the trial court noted its expectation that its order would likely be quickly stayed. The court said,

> because of the extreme speed the Franklin Circuit case made it to review with the Supreme Court, there is every chance that this case will join it, that the Court of Appeals will stay the order very quickly, and then send this case to the Supreme Court with the other.

That is what eventually occurred.

The Governor sought relief from the Scott Circuit Court's order in the Court of Appeals pursuant to CR 65.07. He also sought emergency relief from the Court of Appeals in the form of a stay of the Scott Circuit Court's order. The Court of Appeals granted the Governor's request for a stay and recommended transfer of the CR 65.07 motion to this Court. This Court accepted transfer of the case.

7

## II. ANALYSIS

### A. The trial court erred by refusing to allow the Governor to call witnesses and present evidence, and we vacate the order granting temporary injunctive relief.

During the 2021 regular legislative session, the General Assembly passed H.B. 3[6] and then overrode the Governor's veto of that bill. Section 1 of H.B. 3 created a new section of KRS Chapter 452. Among other things, this new section provided that the venue for any civil suit challenging the constitutionality of a Kentucky statute, executive order, administrative regulation, or order of any cabinet that includes a claim for declaratory or injunctive relief and is brought against a state official in his or her official capacity is in any county where a plaintiff in the suit resides. This marked a significant change, as prior to the passage of H.B. 3, suits of this type were typically required to be brought in Franklin Circuit Court. *See* KRS 452.405. Goodwood brought its suit in Scott Circuit Court because the suit fell within the parameters of H.B. 3, and plaintiff Trindy's is located in Scott County.

Under CR 65.04(1),

> [a] temporary injunction may be granted during the pendency of an action on motion if it is clearly shown by verified complaint, affidavit, or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action, or the acts of the adverse party will tend to render such final judgment ineffectual.

---

[6] Act of Feb. 2, 2021, ch. 2, 2021 Ky. Acts 12.

Further explained, a trial court may issue a temporary injunction when the plaintiff has shown that he will suffer immediate and irreparable injury, that the various equities involved favor issuance of the temporary injunction, and that a substantial question exists on the merits. *Maupin v. Stansbury*, 575 S.W.2d 695, 697–99 (Ky. App. 1978). When weighing the equities, "[a]lthough not an exclusive list, the court should consider such things as possible detriment to the public interest, harm to the defendant, and whether the injunction will merely preserve the status quo." *Id.* at 699. In order to grant a temporary injunction, the trial court must find "that an injunction will not be inequitable, *i.e.* will not unduly harm other parties or disserve the public." *Price v. Paintsville Tourism Comm'n*, 261 S.W.3d 482, 484 (Ky. 2008) (citing *Cyprus Mountain Coal Corp. v. Brewer*, 828 S.W.2d 642 (Ky. 1992)).

Any party adversely affected by a temporary injunction issued by a circuit court may move the Court of Appeals for relief from the injunction pursuant to CR 65.07. In reviewing the issuance of a temporary injunction, an appellate court will only set aside the trial court's decision if the trial court abused its discretion. *Maupin*, 575 S.W.2d at 698. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

In this case, the Governor moved the trial court for a hearing date at which he could call witnesses to testify. Specifically, the Governor told the court he wished to call witnesses to testify regarding the public interests at

9

stake and the likelihood of harm. Goodwood objected to this request, and the trial court overruled the Governor's motion.

CR 65.04 does not specifically require an evidentiary hearing at which witnesses are called. In fact, it states that a temporary injunction may be granted if the requirements for an injunction are "clearly shown by verified complaint, affidavit, or other *evidence.*" CR 65.04(1) (emphasis added). However, it also requires the trial court to "set forth findings of fact and conclusions of law which constitute the grounds of its action." CR 65.04(5). It seems elementary that in order to make full and accurate findings of fact, a trial court must have some actual evidence before it.

This Court has previously held that "a temporary injunction may only be granted with notice and a hearing." *Ky. High Sch. Athletic Ass'n v. Edwards,* 256 S.W.3d 1, 3 (Ky. 2008) (citing *Common Cause of Ky. v. Commonwealth,* 143 S.W.3d 634, 636–37 (Ky. App. 2004); 7 Kurt A. Phillips, Jr., David V. Kramer & David W. Burleigh, *Kentucky Practice, Rules of Civil Procedure Annotated* Rule 65.04, at 669 (6th ed. 2005)). However, we have not yet determined precisely what that hearing must entail. While each hearing will be different, we find several federal Court of Appeals cases to be instructive, and we now provide guidance to the trial courts.

Dating all the way back to 1947, the Third Circuit Court of Appeals has required that trial courts allow both sides to present evidence to support their respective positions before the court issues a temporary injunction.

10

In *Sims v. Greene*, the Third Circuit stated,

> Rule 65(a)[7] provides that no preliminary injunction shall be issued without notice to the adverse party. Notice implies an opportunity to be heard. Hearing requires trial of an issue or issues of fact. Trial of an issue of fact necessitates opportunity to present evidence and not by only one side to the controversy.

161 F.2d 87, 88 (3d Cir. 1947) (footnote omitted). The court went on to say that "[i]t has never been supposed that a temporary injunction could issue . . . without giving the party against whom the injunction was sought an opportunity to present evidence on his behalf." *Id.* at 89.

In 1981, the Second Circuit Court of Appeals did not parse its words when it stated that "[o]n a motion for a preliminary injunction an adequate presentation of the facts is necessary. Where, as here, essential facts are in dispute, there must be a hearing." *Visual Scis., Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 58 (2d Cir. 1981) (citing *Forts v. Ward*, 566 F.2d 849 (2d Cir. 1977)). The court went on to require that "if the hearing is to serve its intended purpose of illuminating and resolving factual issues, it must be conducted fairly. The opposing party *must* be afforded the opportunity to cross-examine the moving party's witnesses and *to present evidence.*" *Id.* (emphasis added).

In *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219 (1st Cir. 2003), the First Circuit Court of Appeals reviewed a denial of a motion for a preliminary injunction in a case where the trial court failed to take evidence or even hear oral argument. *Id.* at 221. The First Circuit noted that the trial court "had

---

[7] Federal Rules of Civil Procedure Rule 65(a) governs preliminary injunctions.

11

before it nothing of evidentiary quality upon which to base such a determination—no affidavits, no depositions, no admissions, no answers to interrogatories. It had only pleadings and written arguments of counsel." *Id.* at 223. Because of this, the First Circuit vacated the order and remanded the case to the trial court. *Id.* at 220. In doing so, the court acknowledged "that preliminary injunction rulings are, by definition, premised on a tentative development of the facts, which will be fleshed out as trial approaches." *Id.* at 223 (citations omitted). However, the court went on to say that

> [e]ven taking the nature and function of such motions into account and giving due weight to the time constraints under which busy district courts labor, we are at a loss to understand how the court could resolve—even tentatively—the factbound tangle pertaining to the [underlying factual dispute] without some evidentiary predicate.

*Id.* The court then summarized its conclusions regarding when an evidentiary hearing is required as follows:

> While forgoing an evidentiary hearing on a motion for preliminary injunctive relief does not, in and of itself, amount to reversible error, evidentiary hearings are often desirable at the preliminary injunction stage. Flexibility is the watchword. If the trial court has before it competing submissions of evidentiary quality, or if the facts are essentially undisputed, or if the answer to the likelihood-of-success inquiry is readily apparent, great respect ordinarily will be afforded to the presider's decision not to convene an evidentiary hearing. If, however, the question is close and time permits, then doubt should be resolved in favor of taking evidence.

*Id.* (internal citations and quotation marks omitted) (citing *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893–94 (1st Cir. 1988)).

After reviewing these cases as well as others, this Court has concluded that evidentiary hearings at which witnesses testify and are cross-examined are

12

the preferred procedure to resolve motions for a temporary injunction. We acknowledge that not every case will require an extensive hearing. Some cases will not have facts that are in dispute. Some factual disputes may be readily resolved through the submission of affidavits and other documentary evidence. We cannot foresee every circumstance that may present itself to a trial court and therefore do not lay down an iron-clad rule that an evidentiary hearing with witness testimony is required on every motion for a temporary injunction. However, we make crystal clear today our strong preference for an evidentiary hearing whenever facts are in dispute. It seems untenable to us that a trial court could make adequate and accurate findings of fact on factual disputes relating to immediate and irreparable injury, the various equities involved, and whether a substantial question exists on the merits without allowing the parties to present evidence.

In the case before us today, the trial court overruled the Governor's request for a hearing date at which he could call witnesses to testify and present evidence in opposition to Goodwood's motion for a temporary injunction. This was error. The Scott Circuit Court was tasked with determining whether Goodwood would suffer immediate and irreparable injury absent the injunction, whether the equities involved favored issuing the injunction, and whether Goodwood presented a substantial question on the merits of the case. Further, in weighing the equities, the trial court had to determine the detriment to the public interest if it granted the injunction. Arguments by counsel were insufficient in this case to allow the trial court to

make accurate and adequate findings of fact, especially when the health and safety of citizens of the Commonwealth would possibly be put in jeopardy by the granting of the injunction. A mere presumption that an appellate court would grant the Governor emergency relief from the injunction—as stated by the trial court in this case—is an insufficient justification for failing to hear evidence that would allow a full and fair determination of the disputed facts. Accordingly, the Scott Circuit Court abused its discretion in failing to hold an evidentiary hearing, and we vacate its order granting a temporary injunction.

### B. We decline to remand to the circuit court for an evidentiary hearing because the issues surrounding the temporary injunction are now moot.

Often when a trial court has failed to hold a sufficient hearing on an issue, we remand that issue back to the trial court for an appropriate hearing. However, we decline to do so in this case because the issues surrounding the temporary injunction are now moot.

Our courts have long recognized that "[a] 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy." *Benton v. Clay*, 192 Ky. 497, 233 S.W. 1041, 1042 (1921) (emphasis added). The long-standing general rule is that "where, pending an appeal, an event occurs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed." *Louisville Transit Co. v. Dep't of Motor Transp.*, 286 S.W.2d 536, 538 (Ky. 1956); *see also Choate v. Koorsen Protective Servs., Inc.*, 929 S.W.2d 184,

14

184 (Ky. 1996); *accord Commonwealth, Kentucky Bd. of Nursing v. Sullivan Univ. Sys., Inc.*, 433 S.W.3d 341, 344 (Ky. 2014). "[I]t is not within the province of appellate courts to decide abstract, hypothetical, or moot questions, disconnected from the granting of actual relief, and the fact that the question involved is one of public importance does not change the rule." *Benton*, 233 S.W. at 1041–42 (internal citation and quotation marks omitted). This rule reflects a concern about "the role of the courts within our system of separated powers, a role that does not extend to the issuance of merely advisory opinions." *Morgan v. Getter*, 441 S.W.3d 94, 99 (Ky. 2014) (citations omitted).

In this case, Goodwood obtained a temporary injunction from the circuit court enjoining the Governor from enforcing against Goodwood various executive orders, administrative regulations, and directives. The injunction also enjoined the Governor from "issuing or enforcing new restrictions against" Goodwood. However, since the issuance of the injunction, the entire legal and factual landscape has changed. The specific orders, regulations, and directives the Governor was enjoined from enforcing have now all, except one, been rescinded by EO 2021-386. The only executive order not rescinded by EO 2021-386 is EO 2020-215 which declared a state of emergency in Kentucky due to COVID-19. At the time EO 2021-386 was issued, the state of emergency was still in effect pursuant to House Joint Resolution (H.J.R) 77.[8] Because of

---

[8] Among other effects, H.J.R 77 extended the Governor's executive order declaring a state of emergency for ninety days. Res. of Mar. 30, 2021, ch. 168, 2021 Ky. Acts 1045.

15

this, Goodwood withdrew its request for the injunction of EO 2020-215 at the circuit court level and has moved this Court to allow it to move the circuit court to amend the injunction to remove reference to EO 2020-215.[9] Due to these changed circumstances, there are no disputed regulations left that could be or are being enforced against Goodwood. Accordingly, there is no practical relief that this Court can grant either party regarding the temporary injunction, and the temporary injunction issues are moot.

In determining that the issues before us are moot, we are especially cognizant of the fact that this case came to us on a CR 65.07 motion for relief from a CR 65.04 temporary injunction. "[A] temporary injunction is of a limited scope and duration and is proper 'only where absolutely necessary to preserve a party's rights pending the trial of the merits.'" *Commonwealth ex rel. Conway v. Thompson,* 300 S.W.3d 152, 161 (Ky. 2009) (quoting *Maupin,* 575 S.W.2d at 698). It "generally functions to hold the status quo until the merits of an action can be decided." *Chesley v. Abbott,* 503 S.W.3d 148, 153 (Ky. 2016) (citing *Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134, 135 (Ky. 1961)). "[T]emporary injunctions attempt to place the parties in a position most likely to minimize harm before the court can finally decide the issues raised in a complaint." *Nat'l*

---

[9] Goodwood continues to concede that the circuit court's injunction against enforcement of EO 2020-215 was an error. As such, we disregard the inclusion of this executive order in the temporary injunction.

We note, by the taking of judicial notice, that as recently as July 19, 2021, the Governor was continuing to issue executive orders asserting that a state of emergency due to COVID-19 continued in the Commonwealth. *See* Exec. Order 2021-496 (July 19, 2021). Given Goodwood's concession, we need not address this.

*Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77, 83 (Ky. 2001). At this time, the Governor is not seeking to take any action that would harm any of Goodwood's rights pending the final adjudication of Goodwood's declaratory judgment action. There are currently no disputed regulations placed on Goodwood that the Governor is seeking to enforce.[10] Accordingly, "there is no live controversy 'for this Court to grant actual or practical relief,'" and the temporary injunction issues are moot. *Kentucky High Sch. Athletic Ass'n v. Runyon*, 920 S.W.2d 525, 526 (Ky. 1996) (quoting *Commonwealth v. Hughes*, 873 S.W.2d 828, 830 (Ky. 1994)).

Although a dismissal based on mootness is the general rule, as with most rules, there are exceptions. Those exceptions include the "collateral consequences" exception, the "voluntary cessation" exception, the "capable of repetition, yet evading review" exception, and the "public interest" exception. We will discuss each in turn.

### 1. Collateral consequences exception

Under the collateral consequences exception to the mootness doctrine, "some concrete and continuing injury . . . must exist if the suit is to be maintained." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing *Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968)). For instance, "the expiration of a criminal sentence has been held not to moot an appeal from the judgment of

---

[10] We take judicial notice of the Governor's press conference held on July 19, 2021, in which he communicated several recommendations regarding face masks. The Governor was clear these were only recommendations, not mandates. Mere recommendations cannot be enforced against any entity.

conviction, because there remain consequences of the conviction (such as the loss of various civil rights) deemed sufficient to keep alive the appellant's personal stake in the outcome of the appeal." *Morgan*, 441 S.W.3d at 99 (citing *Spencer*, 523 U.S. 1, 10–11).

In this case, there are no remaining consequences from the temporary injunction to keep the case alive. Accordingly, the collateral consequences exception to the mootness doctrine does not apply.

## 2. Voluntary cessation exception

Under the voluntary cessation exception to the mootness doctrine, "an appeal may proceed notwithstanding the defendant's voluntary cessation of the challenged action, a primary concern being that a dismissal in those circumstances leaves the defendant 'free to return to his old ways.'" *Id.* (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *Norma Faye Pyles Lynch Fam. Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196 (Tenn. 2009)). This exception also seeks to address the concern "that parties should not be free to manipulate mootness so as to frustrate, after the investment of significant judicial resources, the public interest in having the legality of their practices settled." *Id.* (internal quotation marks and alterations omitted; citations omitted).

Although the courts of this state have not often addressed the contours of this exception, the federal courts have. The United States Supreme Court has announced a "stringent" standard "for determining whether a case has been mooted by the defendant's voluntary conduct . . . : 'A case might become

18

moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). The Supreme Court has further stated that "[t]he 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (alteration in original) (quoting *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203).

In the matter before us, subsequent events have persuaded this Court that the Governor's "allegedly wrongful behavior could not reasonably be expected to recur." *Id.* The current legal landscape is completely different from that which existed when the Governor issued the orders that were enjoined by the Scott Circuit Court.

In *Beshear v. Acree*, 615 S.W.3d 780 (Ky. 2020), we held that the Governor properly invoked his emergency powers pursuant to KRS 39A.100 in declaring a state of emergency based on COVID-19. *Id.* at 801–02. We further held that the Governor's COVID-19-related orders were an exercise of his emergency executive powers, but that to the extent he was exercising legislative power, that power was validly delegated to him by the General Assembly. *Id.* at 806. Therefore, we held that the Governor's orders were constitutionally sound so long as they were rationally related to a legitimate state interest. *Id.* at 819. In short and simplistic terms, we held the Governor's orders were constitutional because of the authority granted to him in KRS Chapter 39A.

19

This continued to be the legal state of affairs until the 2021 Regular Session of the General Assembly when H.B. 1, S.B. 1, and S.B. 2 were enacted. Importantly, all but one of the orders, regulations, and directives the Governor was enjoined from enforcing by the Scott Circuit Court's order were issued prior to the enactment of the aforementioned legislation. This was a time when the Governor's authority to issue those orders was clearly established by *Beshear v. Acree*. As explained above, however, the General Assembly curtailed the Governor's emergency powers under Chapter 39A through its enactment of H.B. 1, S.B. 1, and S.B. 2.

Put simply, we cannot "reasonably expect" the Governor to issue orders similar to the enjoined orders if those new orders would violate the limitations placed on his emergency powers by H.B. 1, S.B. 1, and S.B. 2. To apply the voluntary cessation exception to the mootness doctrine, this Court would have to assume the Governor would act in violation of the law as established by that new legislation. We simply refuse to make that assumption today, with the record before us and on the issues before us.

### 3. Capable of repetition, yet evading review exception

The next exception to the mootness doctrine that we must address is the capable of repetition, yet evading review exception. This exception has two elements: "(1) the challenged action must be too short in duration to be fully litigated prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Morgan*, 441 S.W.3d at 100 (citing *Philpot v. Patton*, 837 S.W.2d

20

491, 493 (Ky. 1992)). Focusing solely on the temporary injunction before us, it is clear that neither element of the exception is met. There is no possibility the same executive orders, regulations, and directives of which enforcement was enjoined will be imposed upon Goodwood again. Although we acknowledge the COVID-19 pandemic is not yet over, the factual circumstances of the pandemic are much different now than they were in March 2020 or even just a few months ago. By its very nature, the state of the Commonwealth as it relates to this pandemic is constantly evolving. Further, as previously discussed, the legal landscape within which the Governor is permitted to act has changed since he issued the enjoined orders, regulations, and directives. Even if the Governor were to somehow issue new regulations that affected Goodwood, it does not seem reasonable to expect that they will be the same as those of which enforcement was enjoined.

Further, there is no reason to believe that any future action of the Governor challenged by Goodwood would be "too short in duration to be fully litigated prior to its cessation or expiration." Although we do not reach the merits of the Governor's actions in this case, we did so in *Beshear v. Acree*, 615 S.W.3d 780. Our ability to render a decision in that case is evidence that future actions by the Governor that are challenged by Goodwood will be able to be fully litigated prior to the cessation or expiration of those actions.

21

### 4. Public interest exception

The final exception to the mootness doctrine that we must address is the public interest exception. In order for this exception to apply, three elements must be clearly shown:

> The public interest exception allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question.

*Morgan*, 441 S.W.3d at 102 (quoting *In re Alfred H.H.*, 910 N.E.2d 74, 80 (Ill. 2009)). None of the elements of this exception have been met, for similar reasons that the elements of the other exceptions have not been met.

The specific issue before us is the validity of a temporary injunction that enjoins enforcement of executive actions, all of which have been rescinded, against a few certain entities. Given the limited nature of the question before us, specifically the limited nature of the Scott Circuit Court injunction, we cannot hold that this appeal presents an issue that is of a public nature. We also do not see "a need for an authoritative determination for the future guidance of public officers," as the legal landscape has dramatically changed since the executive actions enjoined were taken. Finally, given the Governor's recension of the executive actions at issue in this case, the changed legal and factual landscape, and the limited nature of the injunction we are reviewing, we do not see a likelihood that the same question presented to us today will recur.

22

Having determined that the issues related to the temporary injunction issued by the Scott Circuit Court are moot and that no exception to the mootness doctrine applies, we make one additional observation about the temporary injunction. Along with enjoining the enforcement of a host of specifically enumerated executive orders, administrative regulations, and directives, the Scott Circuit Court also stated that the Governor was "specifically enjoined against issuing or enforcing new restrictions" against Goodwood. We take this opportunity to reiterate that courts are "not empowered to enjoin possible future violations" of the law. *McCloud v. City of Cadiz*, 548 S.W.2d 158, 161 (Ky. App. 1977) (citing *Waddle v. City of Somerset*, 281 Ky. 30, 134 S.W.2d 956, 959 (1939)).

### III.    CONCLUSION

For the foregoing reasons, we vacate the trial court's order granting a temporary injunction and remand this matter to the Scott Circuit Court for further proceedings, if any, consistent with this Opinion.

All sitting. All concur.

23

COUNSEL FOR MOVANT, GOVERNOR BESHEAR:

Amy Denise Cubbage
Marc Griffin Farris
Steven Travis Mayo
Taylor Allen Payne
Laura Crittenden Tipton
Office of the Governor

COUNSEL FOR MOVANTS, SECRETARY FRIEDLANDER
& COMMISSIONER STACK:

Wesley Warden Duke
David Thomas Lovely
Cabinet for Health and Family Services

COUNSEL FOR RESPONDENTS:

Oliver J. Dunford
Steven M. Simpson
Daniel T. Woislaw
Pacific Legal Foundation

Joshua Stephen Harp
Baughman Harp, PLLC

COUNSEL FOR AMICUS, COMMONWEALTH OF KENTUCKY:

Stephen Chad Meredith
Solicitor General
Office of the Attorney General

COUNSEL FOR AMICUS, ROBERT STIVERS,
PRESIDENT OF THE KENTUCKY SENATE:

David Earl Fleenor
Office of the Senate President

COUNSEL FOR AMICUS, DAVID W. OSBORNE,
SPEAKER OF THE KENTUCKY HOUSE
OF REPRESENTATIVES:

David Eric Lycan
Embry Merritt Shaffar Womack PLLC


COUNSEL FOR AMICUS, U.S. SENATOR RAND PAUL:

Luke McClure Milligan
University of Louisville, Professor of Law


COUNSEL FOR AMICI, SOUTHEASTERN LEGAL FOUNDATION,
MACKINAC CENTER FOR PUBLIC POLICY, AND NEW CIVIL LIBERTIES
ALLIANCE:

Gregory Adam Napier
Troutman & Napier, PLLC

John J. Vecchione
Jared McClain
New Civil Liberties Alliance