William S. HARMAN et al., Appellants,

v.

T. J. ALLEN, individually and T. J. Allen, d/b/a Martin Supply Company, Appellees.

Court of Appeals of Kentucky.

Nov. 30, 1956.

Motion for Modification Denied
Jan. 25, 1957.

CULLEN, Commissioner.

In an action brought by T. J. Allen, who operates a general merchandise store in the town of Martin, in Floyd County, the circuit court permanently enjoined William S. Harman and E. C. Slade from reconstructing and placing in operation a coal ramp and crushing machine along a railroad siding behind Allen's store building. Harman and Slade have appealed.

■ Since the enjoined activity is in the category of a *threatened* nuisance, the injunction could properly be granted only upon a finding that a nuisance necessarily would result from the activity. City of Somerset v. Sears, 313 Ky. 784, 233 S.W.2d 530. The question on appeal is whether there was sufficient evidence to support such a finding.

■ The coal ramp was constructed originally in 1947, by R. M. Hall, along a side track belonging to Slade. A short side track had been built previously by Slade for the purpose of shipping oil and gasoline, and he extended it to accommodate the ramp. The ramp was used during the first six months of 1948 and again for a short time in 1950. The method of operation was for motor trucks to back up on the ramp and empty their loads into a hopper, beneath which was a conveyer belt that carried the coal up an incline to a point above the siding, where the coal dropped off the belt into railroad cars.

There was evidence that during the operations in 1948 and 1950 a great deal of coal dust was thrown up. The dust settled thickly on merchandise in Allen's store and upon the millwork in a nearby lumber yard. It also settled upon the porches of dwellings in the vicinity. There also was evidence of considerable noise and traffic congestion resulting from the operation.

Combs & Combs, Prestonsburg, Kenneth A. Howe, Pikeville, for appellants.

W. W. Burchett, Prestonsburg, for appellees.

From 1950 to 1956 the ramp remained idle, and it fell into an advanced state of disrepair. In 1952 Slade bought the ramp and an adjoining lot from Hall, but made

no use of it. In 1956 Slade leased the property to Harman, with the view of renewing operation, and when Harman began to reconstruct the ramp the present lawsuit was filed.

Harman proposed to operate a coal crusher in connection with the ramp. The coal would be conveyed from the hopper into the crusher, and from the crusher to the dumping point above the railroad cars. He testified that the conveyor belt channels would be covered, and that sprinklers would be placed at the hopper and at the end of the conveyor above the railroad cars, to control the dust. It is the contention of Harman and Slade that the dust will be adequately controlled, and that there will be no comparison between the new operation and the old. They say, therefore, that the evidence that excessive dust resulted from the old operation is not competent to show that the new operation will be a nuisance.

This contention labors under several handicaps. In the first place, covering the conveyor belt channels could not materially reduce the dust problem, because obviously the most dust results from the dumping operations, from the trucks into the hopper, and from the conveyor belt into the railroad cars. In the second place, the crusher necessarily will create additional dust and noise. In the third place, the evidence as to the proposed sprinkler system was most unsatisfactory. Harman testified that he proposed to use a sprinkler system of his own design. There was no evidence that such a system had ever worked satisfactorily. On the contrary, there was evidence for the plaintiffs that sprinklers are not practicable because they damage the coal by excessive moisture, and that some of the larger mining companies use *steam* sprays to reduce dust but even they require a dryer to reduce the moisture.

We think the circuit court was warranted in finding that the new operation would not differ materially from the old as concerns dust, noise and traffic congestion.

Harman and Slade point to the fact that the economy of the town of Martin depends primarily on the coal industry; that some 200 railroad cars of coal pass by the rear of Allen's store each day on the main tracks of the railroad; and that some 50 trucks loaded with coal travel the highway each day in front of Allen's store. The argument is, in substance, that a coal ramp, regardless of dust, noise and congestion, cannot constitute a nuisance in this community.

In Reynolds v. Community Fuel Co., 309 Ky. 716, 218 S.W.2d 950, and Hacker v. Rader, 309 Ky. 579, 218 S.W.2d 404, we upheld findings of fact by circuit courts that certain coal ramps did not constitute nuisances. And in Brumley v. Mary Gail Coal Co., Ky., 246 S.W.2d 148, we affirmed a judgment based upon a jury verdict that a certain coal processing plant was not a nuisance. In each of those cases we indicated that the economy of the community may be considered as a factor, and in the Reynolds case we said that we must consider the nature of the locality in which the operation is conducted, and the effect it has upon the average person in the community with normal sensibilities rather than how it affects the fastidious or sensitive few. However, none of these cases is authority for the broad proposition that a coal ramp cannot be a nuisance in a community with an economy primarily based on the coal industry.

In each of the three cases cited above there was evidence from residents in the community that the coal operations did not cause them annoyance or discomfort. In the case before us the evidence is all one way as to the annoyance and discomfort from the previous operations of the ramp.

We think that under all the evidence there was raised a question of fact, the chancellor's decision on which we cannot say is clearly erroneous. CR 52.01.

■ A further contention is made, that Allen is estopped to complain of the ramp by reason of his acquiescence in the orig-

inal construction and operation of the ramp, and in Slade's purchase of the ramp and adjoining lot in 1952. At the time the ramp was constructed and first operated, Allen was merely a tenant in the store building, which was owned by Hall, and he handled only hardware items, which were not damaged by the coal dust. When Allen purchased the store building in 1949 the ramp had gone out of operation, and as the ramp continued to remain in disuse he expanded the scope of his merchandise to include such things as appliances, furniture, bedding and household supplies. There is nothing to indicate that Allen had knowledge of Slade's intent to purchase, prior to the purchase of the ramp in 1952, so it is difficult to see how Allen could have done anything other than acquiesce in that purchase. As soon as it became known that Harman and Slade intended to rebuild the ramp, Allen voiced his protest. Under these circumstances we cannot say that Allen is estopped.

The judgment is affirmed.