**J. R. CURRY et al., Appellants,**

**v.**

**FARMERS LIVESTOCK MARKET, etc., Appellees.**

Court of Appeals of Kentucky.

Feb. 10, 1961.

Boyd F. Taylor, London, for appellant.

Calvert C. Little, London, for appellee.

PALMORE, Judge.

The appellants, J. R. Curry and wife, brought this action against the appellees, partners doing business as Farmers Livestock Market, to enjoin an alleged nuisance in the form of a livestock barn and market maintained on premises adjacent to the plaintiffs' property in the city of London, Kentucky. After hearing the evidence the chancellor denied the relief, resulting in this appeal.

One preliminary matter requires disposition before we proceed to the substance of the case. Having been denied a temporary injunction by the trial court during the pendency of the action there, plaintiffs sought one in this court under CR 65.11, and the relief was denied. The case was then submitted to the trial court (apparently by agreement) on the proof theretofore introduced by the respective parties at the hearing on the original motion for a temporary injunction, and a judgment was entered dismissing the complaint. Appellees now contend, citing Taylor v. Mills, Ky.1958, 320 S.W.2d 111, that in denying a temporary injunction this court in effect has decided the issues involved on the appeal, hence the appeal should be dismissed. By its very nature, however, a temporary injunction is designed merely to hold the status quo until the merits can be decided. Whether and by what court it is granted or denied cannot affect the law of the case on the merits. Taylor v. Mills, supra, wherein this court had theretofore disposed of the issues on their merits, has no application here.

The properties involved in this dispute are located at the Y formed by the junction of the old Dixie Highway with U. S. Highway 25 (South Main Street) in the city of London. Proceeding from south to north, Highway 25 becomes the right or east fork of the Y, and the old Dixie Highway, diverging to the left, becomes the west fork. Most of the Curry property is within the immediate crotch of the two, extending a distance of several hundred feet up each of the two streets or highways and bordered on the north by the stockyard property of the defendants, which runs through from one of the streets to the other. The remainder of the Curry property lies along the east side of Highway 25 on both sides of a cross street entering that highway at right angles, from the east, almost directly opposite the point formed by the junction of the two highways.

The Currys bought their property in 1938 or 1939. At that time there was located in the point of the Y an establish-

ment called London Hall. They made it into a restaurant and still operate it as such, with a service station attached. In 1947 they built a motel called London Hall Motor Court immediately across Highway 25 on the north side of the street entering from the east. Meanwhile, in 1940 or 1941, defendants or their predecessors had constructed on their property to the north a commercial stock barn. Measuring each along a direct course to this barn, plaintiffs' restaurant and motel are both about 600 feet from defendants' property line. In 1952 or thereabouts plaintiffs built a swimming pool and bath house (whether for private use or for their customers is not shown) at the north end of that portion of their property within the forks of the Y, adjacent to the stockyard premises. In 1957 they constructed and moved into a new residence within the forks of the Y, facing the old Dixie Highway. Again measuring straight toward the stock barn, the residential lot is 262 feet from defendants' property line.

Through the years both plaintiffs' business and the stockyard enterprise grew and prospered. For a number of years it has been the custom for the stockyard to hold a cattle auction every Tuesday. On an average 250 to 300 head are sold at the weekly sale, 85% to 90% of which are kept in the barn for two or three days. During the other days of the week perhaps 10% of this number of cattle and calves are normally on hand. According to defendants this volume of business has been the same for about twelve years.

In 1958 the stock barn was destroyed by fire, whereupon defendants commenced the construction of a new and improved barn on the same premises but 150 feet farther removed from plaintiffs' property. Plaintiffs, who had not theretofore complained of the stockyard, at once notified defendants to desist on the ground that the business in question was a nuisance. Defendants declined to abandon the project and plaintiffs promptly brought this suit, alleging

that the day-and-night bawling of calves, the constant odor of manure, the emanation of flies, the noises of loading and unloading, the congregation and activities of hawkers, peddlers and traders in the area on sale days, the serious congestion of traffic, the use of loudspeakers by political candidates and various other advertisers, the breeding of dogs within public view by dog fanciers attracted to the premises, the proclivity of the more uncouth visitors to relieve their calls of nature out of doors, and various other offensive by-products of the stockyard business were injurious to plaintiffs' restaurant and motel business and to the peaceful enjoyment of their property for residential purposes. The complaint set forth also a city ordinance making it a misdemeanor to conduct an offensive trade or nuisance, in which ordinance bleating cows or calves, the congregation of boisterous persons on the streets, and "other things which shall become offensive to the smell or dangerous to the health" are enumerated as examples.

In varying degrees the proof tended to sustain the existence of the numerous annoyances described in the complaint. But in spite of the presence of these disturbances over the period of at least 12 years, plaintiffs admit that their business has flourished and is now prosperous. The neighborhood is mixed commercial and residential. The city sewage disposal plant is located 700 feet up the old Dixie Highway from plaintiffs' residence lot, across the street from the northwest corner of the stockyard property. A slaughterhouse is situated on the side street about 250 feet behind the motel lot east of Highway 25. Also to the east of Highway 25 and about 400 feet from the motel property is a barn wherein 10 to 30 ponies and horses are kept for commercial purposes. A skating rink is operated on the west side of Highway 25, 300 feet to the north of plaintiffs' property line. None of these particular operations rivals the degree of annoyance

provided by the stockyard, but their presence and proximity illustrate the heterogeneous character of the environs.

There are other sources of friction and controversy between the parties, but the foregoing will suffice to cover the essential picture. Evidence for the defendants quite naturally tended to minimize the degree of annoyance. At least two close neighbors testified that they suffer no disturbance from the stockyard. Defendants proved that their business is conducted according to standards customary to stockyards, especially with regard to periodic removal of manure accumulation and spraying in order to keep down flies. They testified also that the new barn will be 150 feet more distant from plaintiffs' property and will be a better building, partially concrete block, with more accessible toilet facilities for patrons and visitors. They hope to have more parking room on the premises. It was proved that their business is of importance to the community. There are, of course, certain things over which defendants have no control, such as the activities in the streets of hawkers, traders, dog fanciers, candidates and the other assorted cast of characters contributing to the natural hurly-burly of a Kentucky livestock auction.

The defendants' answer in effect denied the existence of a nuisance, asserted estoppel, and pleaded a prescriptive right by virtue of the existence of all the circumstances mentioned in the complaint for more than 15 years. Incident to the general denial it is contended also that because of the temporary cessation of the livestock business during construction of the new barn there is no existing nuisance and plaintiffs cannot enjoin a threatened nuisance. We shall deal with these defenses in reverse order.

■ Defendants having themselves testified that on completion of the new barn their operation would be substantially the same as before, we do not believe that the temporary cessation of business during the reconstruction period would put the situation in the category of a "threatened" nuisance. Moreover, it is settled that if a threatened activity will necessarily result in a nuisance it may be enjoined. Harman v. Allen, Ky.1957, 297 S.W.2d 59; City of Somerset v. Sears, 1950, 313 Ky. 784, 233 S.W.2d 530; 39 Am.Jur. 416 (Nuisances, § 151).

■ The right to maintain a private nuisance may, in certain circumstances, be obtained by prescription. W. G. Duncan Coal Co. v. Jones, Ky.1953, 254 S.W.2d 720, 723; 39 Am.Jur. 478 (Nuisances, § 202); 66 C.J.S. Nuisances §§ 91–101, pp. 849–853. But where the annoyance is of the character described in this case "the rule is more theoretical than practical, because of the inherent difficulties in establishing such a right by proof." Matthews v. Stillwater Gas & Electric Light Co., 1896, 63 Minn. 493, 65 N.W. 947, 948 (cited, 152 A.L.R. 346). See also Wood on Nuisances (3d ed.), Vol. II, §§ 712, 713, and West Ky. Coal Co. v. Rudd, Ky.1959, 328 S.W.2d 156, 160. These difficulties inhere in the necessity of proving that the annoyance has not been progressive in character, but has existed during the full 15-year period of limitations as an actionable wrong and in no less a degree than at the time the action is brought.

■■ In this case the defense of prescription is defeated in the first instance by the testimony of the defendants to the effect that the present volume of their business has continued for only 12 years, and in the second instance by the changes in the position of the plaintiffs during the interim, brought about by the increased utility of their property. It must be remembered that the existence of a nuisance is determined on the basis not only of the defendant's activity, but also the gravity or materiality of its harmful effect on the plaintiff. Louisville Refining Co. v. Mudd, Ky.1960, 339 S.W.2d 181, 186; City of Somerset v. Sears, 1950, 313 Ky. 784, 233 S.W.2d 530, 531. It requires the balanc-

ing of many considerations and is ultimately a question of degree. Therefore, the shifting of any major circumstance bearing on the respective situations of the parties creates a new relationship and, in the case of a pre-existing nuisance, results either in a fresh nuisance or in no nuisance at all. We consider that the building of the motel in 1947, the swimming pool in 1952, and especially the residence in 1957 were all material changes of situation, each of which would, if a nuisance then existed, establish a new beginning date for the prescriptive period. Therefore, the defense of prescriptive right cannot prevail.

■■ It has been held that the purchaser of property affected by an existing nuisance is not estopped to complain of it, though the circumstance may be considered as a factor in determining the equities of the case. W. G. Duncan Coal Co. v. Jones, Ky.1953, 254 S.W.2d 720, 723. That the complainant has "moved to the nuisance" is no defense. C. Rice Packing Co. v. Ballinger, 1949, 311 Ky. 38, 223 S.W. 2d 356, 359. The same principle applies to the erection of a residence in the vicinity after the nuisance is created. 39 Am.Jur. 472 (Nuisances, § 197). Thus it cannot be said that plaintiffs are precluded by their voluntary erection of the residence and other improvements in the face of the alleged nuisance.

■ One of the defendants testified that when he bought his interest in the business he relied on its having operated for several years without protest or objection. This comes closer to the fundamental theory of estoppel than does the matter of priority of occupation. But mere silence or failure to remonstrate could not justly work an estoppel against parties who had no active hand in the transaction. 66 C.J. S. Nuisances § 142, p. 950. See also Harman v. Allen, Ky.1957, 297 S.W.2d 59.

■■ With respect to the city ordinance that apparently makes a public offense of some features of the stockyard operation, equity will not enjoin an activity because it is a crime, though its abatement of a nuisance may have the effect of enjoining a crime. Cf. 39 Am. Jur. 410 (Nuisances, § 147); 66 C.J.S. Nuisances § 9b, pp. 748–750. Be that as it may, we are not in a position to consider the effect, if any, of the ordinance in this case, because it was not introduced in evidence. See Fryrear v. Kentucky & Indiana Terminal R. Co., 1949, 310 Ky. 250, 220 S.W.2d 546, 549.

■ The trial court did not make specific findings of fact and conclusions of law as required by CR 52.01, hence the record affords no information as to the basis of its judgment. Since the theories of "threatened" nuisance, prescription and estoppel provide no valid defense we must assume perforce that the judgment reflects a factual determination to the effect that under all the facts and circumstances of the case the business of the defendants simply does not constitute a nuisance to the plaintiffs. This being so, we are limited by CR 52.01 to determining whether such a finding is clearly erroneous.

There are several individual elements of annoyance and offense in this case that in other cases, under other circumstances, have been found to constitute nuisances. But each nuisance case is unique, from which it follows that the question of whether a given fact situation results in a nuisance cannot be determined wholly by any particular precedent. We conclude that there is room for a difference of opinion among reasonable minds under the facts of this case. Therefore, we are unable to say that the chancellor's determination of the ultimate factual question of whether a nuisance exists was clearly erroneous.

The judgment is affirmed.

BIRD, C. J., not sitting.