**ASSOCIATED CONTRACTORS STONE CO., Inc., et al., Appellants,**

**v.**

**PEWEE VALLEY SANITARIUM AND HOSPITAL etc., et al., Appellees.**

Court of Appeals of Kentucky.

March 15, 1963.

Rehearing Denied March 20, 1964.

Frank J. Dougherty, Jr., R. D. McAfee, Louisville, for appellants.

J. Donald Dinning, McElwain, Dinning, Clarke & Winstead, Louisville, for appellees.

PALMORE, Judge.

The question before us in this injunction case is whether the chancellor's finding (in substance and effect) that a rock quarry would necessarily result in unreasonable interference with the use and enjoyment of other property in its vicinity, and thereby constitute a nuisance, was "clearly erroneous." CR 52.01; Curry v. Farmers Livestock Market, Ky.1961, 343 S.W.2d 134, 138.

To sustain an anticipatory injunction against a threatened nuisance there must be sufficient evidence "that a nuisance necessarily would result from the activity." Harman v. Allen, Ky.1956, 297 S.W.2d 59,

60; City of Somerset v. Sears (1950), 313 Ky. 784, 233 S.W.2d 530, 532. A rock quarry is not a nuisance as such but may be so conducted as to be a nuisance in fact, as "where blasting and dust in its operation substantially interfere with the comfort of residents in the neighborhood." Cf. 38 Am.Jur. 367 (Nuisances, § 107); Annotation, "Quarries, gravel pits and the like as nuisances," 47 A.L.R.2d 496; 66 C.J.S. Nuisances § 61, p. 810.

The proposed quarry site is located in the edge of Oldham County a short distance southeast of the City of Pewee Valley. It is a rustic neighborhood with no industry and no public water supply. The need for water is satisfied by wells, cisterns, private reservoirs and ponds. This suit was brought by over 50 parties who reside or conduct institutions (including a hospital) in the area. Their proof (some of it irrelevant) clustered around three competent salients, (1) lowering of the "water table" likely to result from drainage of underground waters, by force of gravitation, to and out of the face of the quarry when the rock formations are cut open, (2) damage to the natural water supply through disturbance, by the use of explosives at the quarry, of underground barriers that now serve to impound the water, and (3) disruption of the peace and quiet by vibrations from blasting.

■ With respect to the possible depletion of neighboring water wells merely by the process of excavating, or cutting openings through which percolating waters might escape and thus "bleed" the supply from surrounding lands, it is doubtful that there could be a cause of action in view of the rule that the owner of land, when putting it to a legitimate and not otherwise unreasonable use, "is not liable to the owner of adjoining land for injuries to wells or springs fed by hidden underground streams flowing in unknown channels or percolating waters." Cf. United Fuel Gas Co. v. Sawyers, Ky.1953, 259 S.W.2d 466, 468, 38 A.L.R.2d 1261, 1264.[1] If, on the other hand, wells are polluted or depleted (or any other damage done) by a shaking of the ground, the law heretofore has been that there is no cause of action in the absence of negligence in the performance of the blasting operation. Marlowe Construction Company v. Jacobs, Ky.1957, 302 S.W.2d 612. If that rule is applied to this case there can be no injunction, because no one can say in advance that there will be negligence, and without it the thing that is threatened (even if it will cause damage) would not be a wrong.

■ We have concluded, however, that the rule of nonliability for damage by concussion or vibration without negligence is inconsistent with the principles set forth in Louisville Refining Company v. Mudd, Ky. 1960, 339 S.W.2d 181, for the determination of what is a nuisance. In that case we abandoned the theory that a "reasonable" (in the sense of non-negligent) use of property cannot be a nuisance, in favor of the principle that in the light of all the circumstances of a case a use that is otherwise "reasonable" may be rendered unreasonable by the gravity of its effect upon the use and enjoyment of other property.

The testimony of plaintiffs' geologist on the probable underground effects of blasting was not related to size of charge, method of shooting, or distances. Closely analyzed, his opinions in this respect were hardly more than speculative generalizations. The destructive possibilities thus indicated were a circumstance the chancellor was entitled to consider in weighing the necessity for injunctive relief, but this testimony alone would not support a finding

---

1. This opinion was modified in Louisville Refining Company v. Mudd, Ky.1960, 339 S.W.2d 181, only to the extent of its subscription to the theory that a lawful use of property in a careful and prudent manner can never be actionable, regardless of an unreasonable amount of harm to others.

that material damage "necessarily would result."

Apart, however, from the water phase of the case, there is other and more positive proof that the operation of the quarry will materially affect the peace and quiet of the neighbors in the enjoyment of their homes. It so happens that before the institution of this proceeding the defendants set off at the quarry site a 2,000-lb. test charge of dynamite, a quantity they admit to have been substantially smaller than they expect to use routinely. This blast was heard and the tremor felt by several of the plaintiffs in their homes nearby. One said that his television set, the chimney, and "every window in the house" shook. Another said the noise caused his wife to jump up and scream and the concussion "actually blew the curtains out." Some of the plaintiffs live directly across the road from the quarry property. If their homes were shaken by the test shot, it is certain that they would be repeatedly shaken by the larger shots expected to be used in the regular course of business. We think this is an interference they should not be forced to suffer.

■ In Louisville Refining Company v. Mudd, Ky.1960, 339 S.W.2d 181, we scanned some of the historical developments in the law of nuisance. There was a time when a man's right to the unmolested enjoyment of his property was nearly absolute, but the industrial revolution changed all this, and there came a time when industry could do no wrong so long as its activities were lawful and it committed no direct trespass. Today the policy of the law is to achieve a reasonable balance between the peace and dignity of the individual, especially in the enjoyment of his home and community, and the needs of commerce.

■ The evidence established with reasonable certainty that the dwellings of at least some of the plaintiffs would be subjected for an unlimited period in the future to the process of being shaken to such a degree as to constitute a material and continuing annoyance. This is no less real, no less unreasonable, and no less wrongful an invasion than a direct trespass. The distinction between a nuisance and a trespass in this respect is without substance or justifiable effect. Cf. Bartman v. Shobe, Ky. 1962, 353 S.W.2d 550, 555. The chancellor's finding that a nuisance necessarily would result was not clearly erroneous.

■ It is suggested that in no event should the judgment have entirely enjoined the operation of a quarry, and that it was improper for it to reach beyond the specific things (for example, the use of explosives in such quantities as to cause the premises of the plaintiffs to be shaken or damaged) likely to be harmful. There would be much force in this argument except that by their own stipulations and admissions during the course of trial the defendants left no room to suppose that they could or would conduct their operations in any manner or on any scale that would not involve a shaking of the environs occupied by the plaintiffs. Their case was honest and forthright. They made no pretense that this particular result would not be a necessary incident of their business as they intended to operate it.

The judgment is affirmed.

MONTGOMERY, J., not sitting.