# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 18, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0151-I

BHEP GP I, LLC; BHEP GP II, LLC; BHEP        MOVANTS
GP II-B, LLC; BHEP GP III, LLC; BAY HILLS
CAPITAL MANAGEMENT, LLC; AND LANCE
MANSBRIDGE

V.               ON APPEAL FROM COURT OF APPEALS
NOS. 2021-CA-1155 & 2021-CA-1524
FRANKLIN CIRCUIT COURT NO. 18-CI-00377

KENTUCKY RETIREMENT SYSTEMS        RESPONDENT

## OPINION AND ORDER OF THE COURT

## DENYING CR 65.09 RELIEF

BHEP GP I, LLC; BHEP GP II, LLC; BHEP GP II-B, LLC; BHEP GP III, LLC; Bay Hills Capital Management, LLC; and Lance Mansbridge[1] (collectively referred to as "Bay Hills") have moved this Court for interlocutory relief pursuant to Kentucky Rule of Civil Procedure (CR) 65.09. The Movants seek relief from an order of the Court of Appeals denying their CR 65.07 motion to vacate a temporary injunction issued by the Franklin Circuit Court. For the following reasons, we deny their CR 65.09 motion.

---

[1] Lance Mansbridge is the founder and managing partner of Bay Hills Capital Management, LLC.

# I. BACKGROUND

## A. Factual Background

Beginning in 2007, Kentucky Retirement Systems (Kentucky Retirement) invested over $180 million to be managed by Bay Hills Capital Management, LLC.[2] To facilitate these investments, Bay Hills Capital Management and Kentucky Retirement entered into four written limited partnership agreements (LPAs). Kentucky Retirement is the only limited partner and is the sole investor of each limited partnership. The limited partnerships are "funds of funds," meaning that they invest in other private equity funds. The partnerships are separate legal entities. The four limited partnerships are: (1) Bay Hills Emerging Partners I (Fund I); (2) Bay Hills Emerging Partners II (Fund II); (3) Bay Hills Emerging Partners II-B (Fund II-B); and (4) Bay Hills Emerging Partners III (Fund III) (collectively referred to as the "Funds").[3]

Bay Hills also established four limited liability companies to run and act as the general partner for each partnership (collectively referred to as "Fund GPs"). The general partner for Fund I is BHEP GP I, LLC. The general partner for Fund II is BHEP GP II, LLC. The general partner for Fund II-B is BHEP GP II-B, LLC. The general partner for Fund III is BHEP GP III, LLC.

The Funds also employ Bay Hills Capital Management as an advisor and pay it annual management fees. Bay Hills Capital Management employees

---

[2] We note at the outset that because this is before us on a CR 65.09 motion, we do not have a certified record from the courts below. We only have the portions of the record that were supplied by the parties, and our review is limited thereto.

[3] The Funds are not parties to this litigation.

manage and operate the Funds for the general partners. Each of the Funds are governed by separate LPAs. Notably, each of the LPAs contain a removal provision by which the limited partner can remove the general partner for cause after providing notice to the general partner and an opportunity for the general partner to cure the alleged cause. The LPAs also contain "Key Person Event" provisions by which Kentucky Retirement could elect to dissolve and wind up the Fund if certain key employees of Bay Hills Capital Management died, became incapacitated, ceased being employed by the company, or failed to devote a substantial amount of time to the applicable Bay Hills General Partner or the Fund.

Under the LPAs, the partners are first paid back the capital they invested in the private equity fund and then a 12% preferred return on the principal investment. After the 12% preferred return has been paid to the partners, the general partner receives an additional 8% of the excess of the return of capital, called the carried interest. After the carried interest is paid, any excess profit is distributed in the amounts of 92% to all partners in accordance with their ownership interests and 8% to the general partner. In each fund, Kentucky Retirement holds an ownership interest of 98 to 99%.

In 2016, a Kentucky Retirement employee noticed that the Fund GPs were being paid more than what they were supposed to receive under the LPAs. The Kentucky Retirement investigation revealed that the Fund GPs received distributions over several years that were equivalent to 8% of the total amount distributed from the Funds' investments rather than 8% of the excess of the

3

return of capital. This resulted in the Fund GPs being overpaid by over $2 million. The Fund GPs eventually repaid this overpayment in mid-2017 but only did so after Bay Hills obtained a bank loan to facilitate the repayment. Nonetheless, during its investigation into the overpayment of carried interest, Kentucky Retirement found multiple other areas where it believed Bay Hills was improperly taking payments from the Funds.

By late 2016, a Key Person Event identified in the LPA for Fund III had occurred. Kentucky Retirement sought to exercise its right to dissolve and wind up that Fund and provided its intent to do so to BHEP GP III. Kentucky Retirement alleges that Bay Hills failed to act in good faith in the wind-up process and obstructed this process.

*B. Procedural Background*

Due to the Fund GPs' overpayment and the alleged obstruction of the wind-up process for Fund III, as well as other alleged financial mismanagement, Kentucky Retirement served a notice of removal for cause on the Fund GPs on May 10, 2017. Kentucky Retirement later withdrew this notice based on promises made by the Fund GPs. However, when the Fund GPs allegedly failed to uphold their promises, Kentucky Retirement served a second notice of removal for cause. This second notice was served on February 8, 2018, and informed the Fund GPs that they would be removed from their respective partnerships unless they cured the alleged cause within sixty days.

The Fund GPs did not attempt to cure the alleged cause. Instead, on April 2, 2018, they filed suit in the Delaware Court of Chancery challenging

4

their removal and seeking a declaration of rights. On April 10, 2018, Kentucky Retirement filed the underlying action in Franklin Circuit Court seeking monetary damages and declaratory and injunctive relief to enforce Kentucky Retirement's decision to remove the Fund GPs. Kentucky Retirement moved to dismiss or stay the Delaware action in favor of the Kentucky action, asserting that Kentucky was the proper forum pursuant to the forum selection clauses in the LPAs. The Delaware court stayed that action pending the resolution of the Kentucky action, deferring to Kentucky "in the interests of the orderly and efficient administration of justice."

In its complaint in the Kentucky action, Kentucky Retirement sought a declaratory judgment of removal of the Fund GPs from the partnerships alleging cause for removal existed as defined by each of the LPAs including miscalculations of carried interest, failure to disclose how carried interest was calculated, and calculation of expenses in a manner contrary to the LPAs. Kentucky Retirement further alleged that all of the defendants were grossly negligent, that the Fund GPs breached their fiduciary duties, that Bay Hills Capital Management and Mansbridge aided and abetted the Fund GPs in breaching their fiduciary duties, and that the Fund GPs breached their duty of good faith and fair dealing. Kentucky Retirement also claimed that all the defendants engaged in fraud and conversion and that the Fund GPs breached the contract as found in the LPAs. Finally, Kentucky Retirement claimed unjust enrichment and sought an equitable accounting and a constructive trust.

5

Contemporaneous with filing its verified complaint in Franklin Circuit Court, Kentucky Retirement also filed a motion for a temporary injunction under CR 65.04. Kentucky Retirement sought a temporary "injunction to remove Bay Hills as general partner of the Funds and to comply with the Agreements' requirement for transition of the Funds to a new general partner." Bays Hills opposed the motion for a temporary injunction.

On May 15, 2020, the trial court entered an order granting a temporary injunction to "preserve the *status quo* and prevent the improper distribution of assets pending final adjudication on the merits." In so doing, the trial court temporarily enjoined the defendants "from taking further management fees, distributions, carried interest, tax advances, or other payments from the Funds without prior approval of either the Court or Plaintiff." The trial court found that this relief would "ensure[] that the rights of all litigants will be preserved" pending "a full consideration of all relevant facts and evidence." The trial court did not grant Kentucky Retirement the relief it sought, finding such remedy would be improper, inequitable to the defendants, and would function as a substitute for trial.

In its order granting a temporary injunction, the trial court found that, absent the injunction, Kentucky Retirement would suffer "irreparable injury attendant to the allege[d] breaches of fiduciary duty that could leave [Kentucky Retirement] with no meaningful remedy." The trial court further found there was "at least a substantial possibility that [Kentucky Retirement] will prevail on its ultimate claim against [Bay Hills], and [Kentucky Retirement] has without

6

doubt presented a substantial legal question on the merits regarding [Bay Hills's] alleged misconduct and misallocation and improper distribution of the assets of the partnerships." Relying on the testimony and written report of Kentucky Retirement's expert witness, Marti Murray, the trial court concluded that

> the overcharges by Bay Hills across several categories of fees and expenses—including management fees, carried interest, and operating expenses—as well as the lack of affirmative steps taken to wind-up the business of Funds I, II, and III, constitute conduct that would be "well outside the bounds of what a reasonable investor in Private Equity would find tolerable, in terms of both their magnitude and recurrence."

Thus, the trial court found that a substantial question exists as to "whether the lack of affirmative steps to dissolve the Funds and the continued taking of payments by the General Partners constitutes Cause for removal under the LPAs." Specifically, the trial court found that "a substantial legal question" exists as to whether the Defendants' behavior constitutes gross negligence and whether this behavior materially and adversely affected the Funds, thus providing grounds for removal for cause under the LPAs.

Finally, the trial court found "continuing harm through breached fiduciary obligations to Plaintiff that is separate and distinct from any monetary injury." The trial court recognized that if only monetary injury was at issue, Kentucky Retirement would not be entitled to an injunction. However, the trial court found that "allowing Defendants to continue to award themselves carried interest, management fees, or expenses represents a breach of trust and a breach of fiduciary obligations to [Kentucky Retirement]'s

7

interests." Finally, the trial court found that the breach of trust and breach of fiduciary obligations "is a present, nonspeculative, nonmonetary harm that [Kentucky Retirement] would continue to suffer if preliminary injunctive relief were not granted, and [Kentucky Retirement]'s remedy would thereby be irreparably impaired."

Bay Hills did not seek interlocutory relief from the trial court's May 15, 2020 order granting a temporary injunction. Instead, on June 19, 2020, Bay Hills filed a Motion for Approval of Payment of Fees and Expenses Incurred by the Funds. In this motion, Bay Hills also requested that the trial court "vacate the May 15 Order or modify that Order in a manner that is not inconsistent with the terms of the LPAs, including allowing Defendants to pay and collect reimbursements for entire categories of expenses as provided under the LPAs." Bay Hills sought approval to pay expenses

> associated with preparing the Funds' annual financial reports, outside auditors' fees, tax preparation fees, the legal expenses relating to this action, costs associated with investing, monitoring or managing the Funds' capital, costs incurred in investigating or evaluating investment opportunities, interest on Fund borrowings, costs of reports to the limited partners and insurance premiums.

In its motion, Bay Hills alleged that it was "owed $484,393.32 in fees and expenses associated with managing the Funds, preparing annual financial reports, outside auditors' fees, tax preparation fees and legal expenses, the later category being the lion's share of [Bay Hills]' reimbursement entitlements." These expenses were only itemized to the extent that Bay Hills alleged that it was owed $408,839.39 for "legal expenses" and $60,000 for "reimbursement" for "audit fees incurred and unpaid." No additional

8

explanation for those expenses was included in the motion, and proof of those amounts was not attached to the motion.[4]

Kentucky Retirement filed its own motion for an order prescribing the procedure for enforcement of the injunction order. In its motion, Kentucky Retirement averred that Bay Hills was withholding information that would allow Kentucky Retirement to determine whether Bay Hills was complying with the terms of the injunction and to determine whether to approve distribution. Kentucky Retirement's proposed procedure would allow the Funds to continue to distribute money to Kentucky Retirement, place in an escrow account any payment to which Bay Hills believed it was entitled, and provide information received by Bay Hills from the Underlying Funds so that Kentucky Retirement could monitor compliance with the injunction order.

On December 16, 2020, the trial court held a hearing at which it heard arguments on both motions. At the outset of the hearing, the court explained that it had expected Bay Hills to present an itemized list of fees and expenses it was seeking as well as the justification for those fees and expenses. The court noted that there was nothing in Bay Hills's filings to provide this information and that it "really want[ed] to know the specifics" regarding the monies to

---

[4] Four months later and after failed mediation, Bay Hills renoticed its Motion for Approval of Payment of Fees and Expenses Incurred by the Funds and filed a supplemental memorandum in support of said motion. In the supplemental memorandum, Bay Hills alleged it was then owed a total of $635,490.93, broken down as follows: $393,572.17 for legal fees, $69,300.00 for audit fees, $24,000.00 for fund administration, $119,400.00 for tax preparation, and $9,218.76 for insurance. Bay Hills further alleged it was owned $238,009.09 in management fees and approximately $1,050,625.97 in carried interest payments. Again, no proof of these expenses or how they were calculated was included with the memorandum.

9

which Bay Hills thought it was entitled. Following the hearing, the trial court took the parties' motions under submission.

On April 26, 2021, Bay Hills filed a Motion to Vacate Order Granting Temporary Injunction. Attached to this motion were spreadsheets that purported to justify Bay Hills's calculation of the distributions and carried interest to which it was entitled. Kentucky Retirement opposed, arguing that Bay Hills was attempting to improperly relitigate the original injunction, and sought a status hearing. With three motions then pending, the trial court held a hearing on June 9, 2021, to hear arguments from both parties.

On September 14, 2021, the trial court entered an order resolving each of the motions. The trial court denied Bay Hills's request for payment of its attorneys' fees. The trial court denied Bay Hills's requests for the court to amend or vacate its injunction order. The trial court ordered that Bay Hills could pay from the Funds any outstanding third-party claims after providing "complete documentation for such payments to" Kentucky Retirement and that Bay Hills would be required to petition the court for any future third-party claims before paying those from the Funds. Finally, the trial court ordered that Bay Hills could petition the court for payments of carried interest, management fees, or any other amounts to be paid to Bay Hills directly out of the Funds but that Bay Hills would be required to "provide sufficient documentary proof that they are entitled to such. Otherwise, the [c]ourt orders that these payments be deposited in an escrow account during the pendency of this action."

10

Specifically, regarding attorneys' fees for the underlying litigation, the trial court found that "because the Funds are composed of assets contributed by [Kentucky Retirement], any payment from the Funds to cover [Bay Hills's] legal fees improperly shifts [Bay Hills's] costs associated with this litigation to [Kentucky Retirement]." The court found that allowing Bay Hills to recover its legal fees for the underlying litigation from the Funds would "violate[] the established rule that each party must bear its own costs during the course of litigation." The court found that to do so would be "especially inappropriate" in this case "given the strong showing made by [Kentucky Retirement] that [Bay Hills has] misappropriated funds and wrongful [sic] paid out compensation to themselves in violation of the agreements." The court went on to say that "[t]his principle is even more compelling in this case by virtue of the fact that all of the funds at issue are public funds that are held in trust for the benefit of public retirees." Finally, the court concluded that "[t]here is a strong presumption against indemnification provisions in contracts applying to suits between the parties to the contract, and the circumstances surrounding the present case—as well as language of the LPAs themselves—do not overcome that presumption."

On October 4, 2021, Bay Hills filed a Motion for Interlocutory Relief in the Court of Appeals under CR 65.07. While that motion was pending in the Court of Appeals, Bay Hills filed a Motion for Approval of Payment of Partner Distributions, Carried Interest and Management Fees in the trial court. In its motion, Bay Hills sought over $3.8 million in distributions and close to $1

million in management fees. Bay Hills justified these amounts by providing the trial court with spreadsheets and explanations based on calculations reached by a third-party fund administrator. Kentucky Retirement responded in opposition of Bay Hills's motion, arguing that Bay Hills was not entitled to any carried interest or management fees after the effective date of the for-cause removal.

On December 9, 2021, the trial court entered an order denying Bay Hills's motion and ordering "that the disputed amounts be held in escrow until this litigation has concluded, or the [c]ourt after notice and hearing approves full or partial distribution of those sums." The trial court again noted that Kentucky Retirement had "made an extremely strong showing that [Bay Hills] took compensation that [it was] not entitled to, and, in fact, [Bay Hills has] acknowledged that [it] overcharged the funds by over a million dollars in carried interest payments." The court further noted that Bay Hills's "right to the compensation requested is highly disputed" and that if Kentucky Retirement ultimately prevailed on the underlying claims for breach of fiduciary duty claims, Bay Hills "may not be entitled to the requested compensation at all." On December 29, 2021, Bay Hills filed a second Motion for Interlocutory Relief in the Court of Appeals under CR 65.07.

On April 14, 2022, the Court of Appeals entered an order denying both of Bay Hills's CR 65.07 motions for interlocutory relief. The Court of Appeals held that the trial court did not abuse its discretion in entering either its September 10, 2021 order or its December 9, 2021 order. The Court of Appeals further

noted that Bay Hills's failure to seek relief from the trial court's May 15, 2020 injunction order effectively waived any objection it had to that order. Therefore, the Court of Appeals deemed waived any arguments Bay Hills made that went to the substantive decisions the trial court made in the first injunction order that were subsequently implicitly incorporated into the trial court's later orders. Thereafter, Bay Hills filed a Motion for Interlocutory Relief with this Court pursuant to CR 65.09.

## II. INJUNCTION STANDARD OF REVIEW

A preliminary injunction is an "extraordinary remedy" and should only be issued "*where absolutely necessary to preserve a party's rights* pending a trial on the merits." *Commonwealth ex rel. Cowen v. Wilkinson*, 828 S.W.2d 610, 612 (Ky. 1992) (emphasis added), *overruled on other grounds by Commonwealth ex rel. Conway v. Thompson,* 300 S.W.3d 152 (Ky. 2009); *see also Bartman v. Shobe*, 353 S.W.2d 550, 554 (Ky. 1962) (explaining that courts "frequently withhold[] the granting of an injunction when the benefit to the plaintiff will be small in comparison to the injury to the defendant"). "[A] temporary injunction is designed merely to hold the status quo until the merits can be decided." *Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134, 135 (Ky. 1961).

Injunctive relief is governed by CR 65.04, which states that a temporary injunction may be granted if

> it is clearly shown by verified complaint, affidavit, or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss, or damage pending a final judgment in the action, or the acts

13

of the adverse party will tend to render such final judgment ineffectual.

This rule effectively requires that a trial court only grant injunctive relief if each of the following is met: first, that the movant presents a "substantial question" in the case ("*i.e.* that there is a substantial possibility that the movant will ultimately prevail"); second, that the injury resulting absent injunctive relief would be immediate and irreparable; and third, that the temporary injunction "will not unduly harm other parties or disserve the public." *Price v. Paintsville Tourism Com'n*, 261 S.W.3d 482, 484 (Ky. 2008) (citing *Cyprus Mountain Coal Corp. v. Brewer*, 828 S.W.2d 642 (Ky. 1992)). "Realizing that the elements of CR 65.04 must often be tempered by the equities of any situation, injunctive relief is basically addressed to the sound discretion of the trial court." *Maupin v. Stansbury*, 575 S.W.2d 695, 697–98 (Ky. App. 1978) (citations omitted). However, "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Norsworthy v. Ky. Bd. of Med. Licensure*, 330 S.W.3d 58, 62 (Ky. 2009) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

Under CR 65.07, a party adversely affected by a temporary injunction may seek relief from the Court of Appeals. "In requesting interlocutory relief pursuant to 65.07, a party is arguing that, by granting or denying an injunction under CR 65.04, the trial court's decision is not based on substantial evidence and is clearly erroneous." *Kindred Hosps. Ltd. P'ship v. Lutrell*, 190 S.W.3d 916, 919 (Ky. 2006) (citation omitted). However, the Court

of Appeals may only reverse the trial court's decision to grant or deny a temporary injunction if the movant shows that "injury or loss will occur in light of the trial court's decision." *Id.*

"A party adversely affected by the Court of Appeals' ruling may, under CR 65.09(1), move this Court for further review. We grant such review only upon a showing of 'extraordinary cause.'" *Boone Creek Props., LLC v. Lexington-Fayette Urban Cnty Bd. of Adjustment*, 442 S.W.3d 36, 38 (Ky. 2014) (quoting *Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77, 84 (Ky. 2001)). Extraordinary cause is a high bar. "While additional review by this Court is limited to those cases which demonstrate 'extraordinary cause,' abuses of discretion by the courts below can supply such cause." *Lasege*, 53 S.W.3d at 84 (footnote omitted). This Court reviews the circuit court's decisions on temporary injunctions for an abuse of discretion. *Boone Creek*, 442 S.W.3d at 38. "Unless a trial court has abused that discretion, this Court has no power to set aside the order below." *Maupin*, 575 S.W.2d at 698 (citations omitted). Thus, "we give considerable deference to the circuit court's evaluation of the dispute, the issues involved, the weighing of the equities, and whether an injunction is proper under the particular circumstances at hand." *Boone Creek*, 442 S.W.3d at 38.

### III. ANALYSIS

Bay Hills moves this Court to vacate the order of the Court of Appeals which denied relief from the September 14 and December 9 orders issued by the trial court. Bay Hills first argues that the injunctions they challenge were

15

improperly granted because they provide only monetary relief. Although the trial court justified its order as an injunction related to fiduciary duties and not monetary relief, Bay Hills argues that the order's effect is to withhold money from Bay Hills. As a matter of law, injunctions may not be granted solely for monetary relief. Bay Hills contends that because economic harm is not irreparable, Kentucky Retirement failed to meet its burden before the trial court for a temporary injunction. As such, Bay Hills argues that the trial court clearly abused its discretion.

Second, Bay Hills argues that the trial court abused its discretion by "rewriting the LPAs" at issue in the case. By this, it appears that Bay Hills disputes the trial court's interpretation of the Funds' indemnity clauses through the trial court's orders. The LPAs for three of the Funds require that the "General Partner . . . shall be indemnified to the fullest extent permitted by law by the Partnership against any cost, expense (including attorneys' fees), judgment and/or liability incurred by or imposed upon them in connection with any action, suit or proceeding" stemming from their participation as General Partner.

The LPAs contain an exception to this indemnity clause where "as determined by a final judgment, order or decree" a party was found to have breached fiduciary duties. Despite no determinative finding of a breach of fiduciary duties, the trial court through one of its contested orders granting a temporary injunction denied attorneys' fees for Bay Hills. In so doing, Bay Hills contends, the trial court "did violence" to the parties' contracts in its indemnity

16

provisions and provisions complimentary to indemnity.[5] Bay Hills additionally argues that the requirement to gain approval for costs is directly counter to these provisions of the LPAs.

Kentucky Retirement, in response, makes four arguments. First, Kentucky Retirement argues that Bay Hills waived any arguments regarding the LPAs' terms because Bay Hills failed to seek relief from the first injunction. Similarly, it next argues that Bay Hills also waived any arguments regarding irreparable harm. Kentucky Retirement contends that neither of the orders before this Court modified the original injunction ordered by the trial court, and accordingly if Bay Hills were to challenge irreparable harm, it would have needed to do so on the first injunction.

Third, Kentucky Retirement contends that Bay Hills's arguments on irreparable harm fail on the merits because the trial court's order was not for monetary relief, but rather addressed the threat Bay Hills posed as fiduciaries if permitted to continue in that role unchecked. It was in part on these grounds that the Court of Appeals affirmed the trial court's orders, writing that "Kentucky Retirement seeks to enforce a bargained-for right to remove the general partner upon 'cause' or breach of fiduciary duty—a right that is difficult, if not impossible, to value and could be meaningless or substantially diminished in value by the end of the litigation absent injunctive relief."

---

[5] The "complimentary" provisions include sections "Authority of the General Partner," "Obligations of General Partner," "Liability of General Partner and Adviser," and "Expenses." Bay Hills's arguments related to these complimentary provisions are that they support Bay Hills's interpretation of the indemnity clause in the LPAs, as they require the Funds to pay all partnership expenses.

Finally, Kentucky Retirement contends that Bay Hills's contractual arguments also fail on the merits. Kentucky Retirement claims that neither the indemnification provision, nor any other provision, provides for fee-shifting. Kentucky Retirement alleges that indemnification such as that within the LPAs applies only to third-party claims, not first-party indemnification. Since Kentucky Retirement and Bay Hills are the parties to the LPAs, Kentucky Retirement argues that the indemnification provisions do not apply. We address the parties' arguments regarding both irreparable harm and indemnity in turn.

## A. Irreparable Harm

Bay Hills first argues that "the Court of Appeals erred in upholding injunctions that are purely monetary in nature and not fashioned to address any risk of irreparable harm." Generally, injunctions should not be issued to provide purely monetary relief, as monetary injury is generally not irreparable. *Norsworth*, 330 S.W.3d at 62 ("[M]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." (quoting *Sampson*, 415 U.S. at 90)); *see also Zirkle v. District of Columbia*, 830 A.2d 1250, 1256–57 (D.C. 2003) ("[F]or it is well established that economic and reputational injuries are generally not irreparable."). However, these arguments go to the merits of the trial court's May 15, 2020 injunction order, not the modifications made to that injunction order in the trial court's September 14, 2021 and December 9, 2021 orders. Significantly, Bay Hills did not seek relief from the May 15 injunction order.

18

In its May 15 injunction order, the trial court found "irreparable injury attendant to the allege[d] breaches of fiduciary duty that could leave [Kentucky Retirement] with no meaningful remedy." The court further found that the breach of trust and breach of fiduciary obligations "is a present, nonspeculative, nonmonetary harm that [Kentucky Retirement] would continue to suffer if preliminary injunctive relief were not granted, and [Kentucky Retirement]'s remedy would thereby be irreparably impaired." If Bay Hills believed these findings were in error, it should have sought relief from this injunction order. It cannot now complain about those findings.

Relatedly, Bay Hills argues that "the injunction orders below still violate Kentucky law because there is no nexus between the monetary relief . . . and the so-called harm that the lower courts purport to address." The monetary relief ordered, however, absent the attorneys' fees issue discussed below, was the same in each of the trial court's three orders. All of the orders required Bay Hills to petition the trial court for any payments it wished to make from the Funds. Although the Court of Appeals described the December 9 order as "foreclose[ing] Bay Hills from petitioning the court for approval of payments from the Funds," we do not view the trial court's order in the same way.

In its December 9 order, the trial court ordered "that the disputed amounts be held in escrow until this litigation has concluded, *or* the [c]ourt after notice and hearing approves full or partial distribution of those sums." (Emphasis added). Although the trial court appears unlikely to allow Bay Hills to pay itself carried interest and management fees from the Funds while the

19

litigation is ongoing, the trial court did not foreclose that possibility entirely, as it still allows Bay Hills to present those sums to it for approval.[6] This is the same relief provided in the initial May 15 injunction order from which Bay Hills did not seek relief. Accordingly, Bay Hills cannot not now allege that the trial court erred.

Because Bay Hills did not seek relief from the trial court's May 15 injunction order, we must assume, without deciding, that the trial court did not abuse its discretion in entering said order. We must further assume that none of the trial court's factual findings in its May 15 order were clearly erroneous. We cannot hold that the trial court abused its discretion in entering its September 14 and December 9 orders, as they were primarily applications or enforcements of the original May 15 injunction order.

*B. Indemnity*

Unlike Bay Hills's arguments regarding irreparable harm, its contractual arguments regarding indemnity stem from an order that is properly before us. In the trial court's September 14 order appealed to this Court, the trial court denied Bay Hills's request for attorneys' fees and indemnity from the Funds. Specifically, the trial court wrote that the LPAs "contain only broad language regarding indemnification and do not specifically contemplate indemnification

---

[6] Bay Hills also argues that the trial court "rewrote the LPAs" by refusing to allow Bay Hills to collect management fees, compensation, and distributions. However, as noted, the trial court did not prohibit Bay Hills from collecting these monies all together and for all time, but instead merely required Bay Hills to obtain the trial court's approval first. Further, this argument goes to the trial court's May 15 injunction order from which Bay Hills did not seek relief.

20

by the Funds of the General Partners or any of the Defendants in suits against [Kentucky Retirement]." In doing so, Bay Hills argues that the trial court violated Bay Hills's bargained-for right to indemnity.

The Funds provide that they will indemnify their General Partner, Bay Hills, in *any* litigation.[7] Bay Hills claims that this should include litigation between the parties to the contract. In essence, Bay Hills would have this Court interpret general indemnity provisions such as the one in this case to apply to first-party indemnity (in which a Partnership indemnifies the parties to the contract when litigation arises between those partners regarding their partnership) in addition to third-party indemnity.

This Court has not yet interpreted the application of general indemnity provisions to first-party claims. However, when this Court has interpreted contractual disputes, we have been careful not to nullify the purpose of the contract: "In order to carry out the intent of the parties, it is our duty to disregard the broad language used which would have the effect to defeat the purpose of the contract and render it a nullity." *Henderson v. Cont'l Cas. Co.*, 239 Ky. 93, 39 S.W.2d 209, 211 (1931).

Here, requiring Kentucky Retirement to secure and protect Bay Hills for its own alleged breaches of contract even where they stem from a breach of fiduciary duties—one of the *exceptions* to the indemnity provisions—would "operate effectively to relieve their agent of any obligation to perform [its]

---

[7] Only three of the four Funds include the indemnity provisions at issue in this case.

21

duties" by invalidating the exception, eliminating incentives to act in good faith, and compensating Bay Hills for their own malfeasance.[8] *R.&J. Oil v. Rodgers*, No. 3:18-CV-00117-GNS-CHL, 2020 WL 201053, *3 (W.D. Ky. Jan. 13, 2020). This cannot have been the intention of the parties in drawing their contract, since it would effectively nullify Bay Hills's duty to act as a fiduciary. The trial court, in issuing its September 14 order, saw this contradiction and issued its order accordingly.

The complimentary provisions that Bay Hills cites as providing additional support for their argument in favor of attorneys' fees similarly fail. The "Authority of the General Partner" and "Obligations of General Partner" provisions each give the General Partner the "power and authority" to "commence or defend litigation that pertains to the Partnership;" as such, the same analysis applied to the indemnity provision also applies to these provisions. The "Liability of General Partner and Adviser" provision states that General Partners may not be liable to Limited Partners. This provision, since it relates to Partnership liability, does not speak to the issue of indemnity on this appeal. Finally, in the "Expenses" provision, the contract provides that the Partnership must pay litigation fees for "expenses and liabilities incurred by or on behalf of the Partnership or for its benefit." This provision clearly does not apply, since the purpose of the underlying suit is to dissolve said Partnership

---

[8] The "finality" language in the exception does not alter our analysis.

and hold Bay Hills accountable for their alleged failure to act appropriately as General Partner.

As such, the trial court did not abuse its discretion by denying Bay Hills's request for the payment of fees incurred in the course of litigation.

## IV. CONCLUSION

For the foregoing reasons, we deny Bay Hills's Motion for Interlocutory Relief pursuant to CR 65.09.

All sitting. All concur.

_____
CHIEF JUSTICE MINTON

COUNSEL FOR APPELLANTS: BHEP GP I, LLC; BHEP GP II, LLC; BHEP GP II-B, LLC; BHEP GP III, LLC; BAY HILLS CAPITAL MANAGEMENT, LLC; AND LANCE MANSBRIDGE:

William A. Hoskins, III
Patrick Flanagan Estill
Jackson Kelly PLLC

Mark Craig Goodman
Christina Wong
Baker & McKenzie LLP


COUNSEL FOR APPELLEE, KENTUCKY RETIREMENT SYSTEMS:

Paul Christopher Harnice
Christopher Edward Schaefer
Sarah Jackson Bishop
Connor Bailey Eagan
Stoll, Keenon & Ogden, PLLC

Mark A. Cameli
Ryan S. Stippich
Reinhart Boerner Van Deuren s.c